UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____
                                               )
In re                                          )
                                               )   CHAPTER 11
THE GROVES IN LINCOLN, INC., *et al.*,  )   CASE NO. 13-11329-HJB
                                               )
                    Debtors.[1]        )   (*Jointly Administered*)
_____)

**DEBTORS' MOTION FOR AUTHORITY TO
(I) PAY PREPETITION WAGES, TAXES AND BENEFITS,
AND (II) CONTINUE TO USE EXISTING ACCOUNT ON A LIMITED BASIS**
(*REQUEST FOR EMERGENCY DETERMINATION AND LIMITATION OF NOTICE*)

The Groves in Lincoln, Inc. ("Groves") and The Apartments at the Groves, Inc.

("Apartments") (collectively, the "Company"), respectfully request the entry of an order

pursuant to 11 U.S.C. §§ 105(a), 363(b), 507(a)(4)-(5) and (8), authorizing (i) payment of the

prepetition portion of wages, salaries and other compensation, employee medical and similar

benefits, and other miscellaneous expenses and benefits due to the Company's employees in the

ordinary course of business, as more fully described below, subject to and as permitted by the

Interim Order Regarding Use of Cash Collateral and Adequate Protection entered by this Court

in connection with the Debtor's Assented-To Motion for Entry of Interim and Final Orders (A)

Authorizing Use of Cash Collateral, (B) Granting Certain Liens and Superpriority Claims, and

(C) Scheduling a Final Hearing in these proceedings (the "Cash Collateral Oder") (collectively,

the "Prepetition Employee Obligations"); and (ii) continued use of its existing bank account on a

limited basis for purposes of this week's payroll.  The Company requests such relief in order to

protect the going-concern value of its business by avoiding the adverse effect on employee

---

[1] The debtors in these jointly administered chapter 11 cases, along with the last four digits of each
debtors' federal tax identification number, are: The Groves in Lincoln, Inc. f/k/a The Groves in Lincoln -
Deaconess, Inc. (0778) ("Groves "), and The Apartments at The Groves, Inc. f/k/a The Groves
Apartments – Deaconess, Inc. (0696) ("Apartments") (collectively, the "Company").

retention and morale that would inevitably result from failing to honor payroll and benefits in the ordinary course of business – with potential harm to the bankruptcy estates and creditors far beyond the magnitude of the prepetition obligations this motion requests authority to pay. **THIS MOTION SEEKS EMERGENCY RELIEF DESCRIBED IN MLBR 9013-1(g)(1) AND (2).** *In order to meet the payroll obligations that are scheduled to be withdrawn from the Company's account early in the day on Thursday, March 14, 2013, pursuant to MLBR 9013-1(g)(1) the Company requests an emergency hearing on this motion on Wednesday, March 13, 2013. The Company also requests relief from this Court, pursuant to MLBR 9013-1(g)(2) authorizing the Company to* limit notice *of this Motion to (i) the United States Trustee, (ii) directly affected parties in interest (as discussed below), and (iii) any party that has entered an appearance or requested notice.*

In support of this motion, the Company states as follows:

1.      On March 11, 2013 (the "Petition Date"), the Company filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2.      The Company continues to operate and manage its business as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

3.      No request has been made for the appointment of a trustee or an examiner, and a creditors' committee has not yet been appointed in these Chapter 11 Cases.

### Background

4.      Groves is a Massachusetts not-for-profit corporation that owns and operates a 168-unit senior independent living facility in Lincoln, Massachusetts, known as The Groves in Lincoln ("The Groves"). The Groves is only 56% occupied. Groves is the sole member of Apartments, an inactive Massachusetts not-for-profit corporation.

5.      Primary financing to construct the facility was supplied by issuing $117,265,000 in tax exempt bonds through the Massachusetts Development Finance Agency (the "Bonds"), with Wells Fargo, N.A. as bond trustee (the "Bond Trustee").  The Bonds, with a current outstanding balance of approximately $88 million, are secured by substantially all of the Company's assets.  Almost all of the Bonds are held by investment funds specializing in this type of financial instrument.

6.      The residents of The Groves are an important constituency because they are essential to the business success of the community and many of them have the right to a substantial refund of entrance fees upon termination of their resident agreements.  Trade debt as of the Petition Date was approximately $22,000.  The members of Groves hold general unsecured claims of $20,613,905.

7.      The Company commenced these Chapter 11 Cases for the purpose of accomplishing an orderly disposition of the Company's assets, with the goals of achieving maximum feasible payment of the Bonds, protecting the residents, providing for the future success of The Groves community, paying trade creditors in full and obtaining waiver of the claims of Groves' members.  Toward that end, the Company signed an Asset Purchase Agreement with BSL Lincoln, LLC, an affiliate of Benchmark Assisted Living LLC, and on the Petition Date filed a motion to sell the assets pursuant to that agreement, subject to higher or better offers.

**Jurisdiction**

8.      This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4425604-2                                   3

9.      The statutory predicates for the relief requested in this motion are sections 105(a), 363(b), 507(a)(4)-(5) and (8) of the Bankruptcy Code.

## Relief Requested

10.      The Company seeks this Court's authority to pay and honor certain Prepetition Employee Obligations.  The Prepetition Employee Obligations, described more fully below, can generally be categorized as follows:

a.   Wages, Salaries, Bonuses and Other Compensation

b.   Benefits

c.   Workers' Compensation

d.   Payroll Taxes and Other Withheld Amounts

e.   Paid Vacation and Sick/Personal Time

f.   Miscellaneous Employee-Related Obligations

11.      The Company also seeks entry of an order authorizing the continued use of its existing bank account on a limited basis to allow such Prepetition Employee Obligations to clear the account

## Wages, Salaries, Bonuses and Other Compensation

12.      The Company currently employs approximately 26 people on a full-time salaried basis, and 22 people on a part-time hourly basis (collectively, the "Employees").  The Employees are critical to the Company's business operations and the success of these Chapter 11 Cases.

13.      In the ordinary course of business, the Company's payroll cycle is a bi-weekly cycle that runs from Sunday to Saturday.  Under standard payroll procedures, the Employees are paid one week in arrears.  The Company last issued payroll checks to the Employees on March 1, 2013 for the period ending on February 23, 2013.  The Company utilizes the payroll-processing

services of Paylocity to issue payroll checks to the Employees.  The day before payroll is due,

Paylocity withdraws the amount thereof directly from the Company's operating account, and

then issues its own payroll check or direct deposit to each Employee depending on the mode of

payment the Employee has selected.

14.     The Company seeks authority to pay the Employees on March 15, 2013 all wages,

salaries and other compensation earned for the period ending March 9, 2013, even though the

entire period occurred before the Petition Date.  The Company also seeks authority to pay the

Employees on March 29, 2013 all wages, salaries and other compensation earned for the period

ending March 23, 2013 even though one day of that period occurred before the Petition Date.

15.     The Company estimates that approximately $67,000 in unpaid wages, salary and

other compensation, all earned in the ordinary course of business, is owed to Employees as of

March 9, 2012, all of which arose during the prepetition period.  The Company estimates that

approximately $67,000 will be owed to Employees as of March 29, 2013, of which

approximately $4,800 arose before the Petition Date.  The Company estimates that no amount

owed to any Employee exceeds the $11,725 priority cap imposed under 11 U.S.C. § 507(a)(4).

16.     The amounts described in the preceding paragraph include amounts that the

Company is required by law to withhold from an Employee's wages, and remit to the proper

taxing authorities, such as federal and state income taxes, social security and Medicare taxes, and

legally ordered wage garnishments and/or domestic support obligations (collectively, the

"Deductions").  All Deductions are included in the amounts withdrawn by Paylocity from the

Company's operating account to pay payroll on a bi-weekly basis as described in the preceding

paragraph, and then remitted by Paylocity to the appropriate taxing authority or other payee.

Except in unusual circumstances, failure to withhold and remit Deductions results in a priority

4425604-2                                               5

claim against the Company under 11 U.S.C. § 507(a)(1) or (8).  The Company's failure to remit

the Deductions as required by law would also give rise to claims against Employees by taxing

authorities, unpaid spouses and beneficiaries of garnishments.  Payment of the Deductions in the

ordinary course would avoid these cascading disruptions that would adversely affect the

Employees' morale, and distract them from operating the business and advancing these Chapter

11 Cases.

17.     Payment of the prepetition portion of the payrolls described in paragraph 15 will

give rise to an obligation by the Company to pay social security and Medicare taxes, the so-

called "employer's portion" thereof, in the amount of $6,000.  Most likely these are

administrative expenses since they arise after the Petition Date, but in case they might be

considered prepetition taxes, the Company seeks authority to pay them.  As prepetition taxes,

thse amounts would be entitled to priority under Section 5078(a)(8) of the Bankruptcy Code.

**Benefits**

18.     In the ordinary course of the Company's business, and as is customary for most

companies, the Company provides the Employees with various benefits.  The Company seeks

authority to pay and/or honor any unpaid prepetition obligations in connection with such benefits

that were incurred in the ordinary course of business and that arose from services rendered

within 180 days before the Petition Date.

19.     The Company offers medical and dental insurance to most of the Employees

(those that are classified as benefit eligible) through a self-funded plan administered by Blue

Cross Blue Shield of Massachusetts[2] (the "BCBS Plan").  The Policy options include a

prescription drug plan and also a flexible savings plan.  The Company seeks authority to pay, in

---

[2] The Company pays Blue Cross Blue Shield a monthly fee of $1,208 to administer the BCBS Plan, which
the Company seeks authority to pay as a Prepetition Employee Obligation.

4425604-2                                    6

the ordinary course of business, any unpaid premiums, deductibles, and prepetition claims

related to the foregoing BCBS plan that arose from services rendered prior to the Petition Date.

The amount of such obligations is currently unknown to the Company.

20.     The Company provides basic life and accidental death and dismemberment

insurance, as well as short- and long-term disability insurance at no cost to all eligible

Employees.  Although the Company believes that these obligations have been paid in full, the

Company seeks authority to pay any outstanding unpaid premiums, deductibles, and prepetition

claim payments relating to such life and disability insurance that arose before the Petition Date in

the event it discovers there are any.

21.     The Company maintains for eligible Employees a 401(k) retirement savings plan

administered by John Hancock (the "401(k) Plan").  Eligible Employees are automatically

enrolled in the 401(k) Plan after one year of continuous active employment with the Company,

during which the Employee must have worked a minimum of 1,000 hours.  Under the 401(k)

Plan, the Company matches 50% of an enrolled Employee's weekly contributions up to a

maximum of 2% of their pay.  The Company seeks authority to pay, in the ordinary course of

business, any outstanding unpaid deductions and matches relating to the 401(k) Plan that arose

before the Petition Date.  The Company estimates these obligations to be in the approximate

amount of $3,100.

### Other Withheld Amounts

22.     Pursuant to the federal government's program permitting employees to use pre-

tax dollars to pay for out-of-pocket health care and dependent care expenses, the Company

deducts from the paycheck of each participating Employee the amount designated by the

Employee for deposit in a Flexible Spending Account and/or Dependent Care Account from

which the Employee may direct payment of permitted expenses.  These deductions comprise

property of the Employees and are forwarded by the Company to appropriate third-party

recipients at varying times.  In the meantime, these amounts are held by the Company.  The

Company estimates that such amounts held for third parties total approximately $6,000.

### Paid Time Off

23.     In the ordinary course of its business, the Company allows Employees to accrue a

specific number of paid vacation hours and sick/personal time for each completed work week

("PTO").  The Company seeks authorization to continue the practice of permitting Employees to

take time off on a paid basis, to the extent of their unused PTO including PTO that accrued

before the Petition Date, in a manner consistent with the Company's prepetition practices.  In

addition, the Company seeks authorization, if any Employee is terminated during the Chapter 11

Cases, to make a cash payment for such Employee for all unused PTO, including PTO that

accrued before the Petition Date, to the extent that the Company would have done so in the

ordinary course prior to the Petition Date.

### Miscellaneous Employee-Related Obligations

24.     The Company may determine that there are additional *de minimis* prepetition

obligations that have not been identified in the motion.  The Company respectfully requests

authority to pay such additional prepetition obligations up to an aggregate amount of $5,000

without further notice or order.

### Use of Existing Bank Account

25.     The Company further seeks authorization of the continued use of its existing

operating account on a limited basis to pay Employee-related obligations.  As described above,

in order to pay this week's payroll on Friday of this week, funds must be withdrawn by the

4425604-2                                           8

payroll service on Thursday.  This leaves a very short time for the payroll service, which is now

set up to withdraw from the Company's prepetition operating account, to switch to the debtor-in-

possession operating account that the Company is in the process of establishing.  Rather than

take any chance of a glitch preventing timely payment of the payroll, it is prudent for the

Company to continue to use its prepetition operating account for this week's payroll.  The

Company will switch the payroll service (as well as all other ACH debits) to the Company's new

debtor-in-possession account as soon as practicable.

### Basis for Relief Requested

26.     Section 363(c)(1) of the Bankruptcy Code provides that a debtor-in-possession,

"authorized to be operated under section . . . 1108 . . . of this title and unless the court orders

otherwise, . . . may use property of the estate in the ordinary course of business without notice of

a hearing."  11 U.S.C. § 363(c)(1).  Section 105(a) of the Bankruptcy Code provides, in part, that

"[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry

out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).

27.     Payment of the Prepetition Employee Obligations, as requested above, is

warranted in these Chapter 11 Cases.  A bankruptcy court's use of its equitable powers to

"authorize the payment of pre-petition debt when such payment is needed to facilitate the

rehabilitation of the debtor is not a novel concept."  In re Ionosphere Clubs, Inc., 98 B.R. 174,

175 (Bankr. S.D.N.Y. 1989); see also In re Just for Feet, Inc., 242 B.R. 821 (D. Del. 1999)

(holding that the court is authorized under section 105(a) to allow immediate payment of

prepetition claims of vendors found to be critical to the debtor's reorganization ) (citing In re

Penn Cent. Transp. Co., 467 F.2d 100 (3d Cir. 1972)); In re Columbia Gas Sys. Inc., 171 B.R.

189 (Bankr. D. Del. 1994) (noting that the debtor may pay prepetition claims that are essential to

the continued operation of its business).  The "necessity of payment" doctrine "recognizes the

existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition

claims where such payment is essential to the continued operation of the debtor." Ionosphere

Clubs, 98 B.R. at 176 (authorizing the payment of prepetition employee wages and benefits).

28.    The benefit to the bankruptcy estates from paying the Prepetition Employee

Obligations far outweighs any detriment to the estates or the Company's creditors.  Failure to

pay the Prepetition Employee Obligations would have a crushing effect on the morale of

Employees.  Resignations, active protest, passive resistance and a general decline in enthusiasm

would cripple the Company's ability to provide the high quality of services to residents that are

essential to preserve the going-concern value of the Company's business.  A decline in going-

concern value or, worse yet, termination by Benchmark of its proposed purchase of The Groves,

could result in a substantially lower distribution to the secured bondholders constituting the

Company's major creditors.  On the other hand, honoring the Prepetition Employee Obligations

would result in minimal, if any, prejudice to creditors.  Recognizing that these expenditures are

necessary to preserve the bondholders' collateral, the Bond Trustee has assented to this motion

on their behalf of the bondholders constituting the Company's major secured creditors.  General

unsecured creditors, too, will benefit from payment of the Prepetition Employee Obligations.

The Company believes that almost the entire amount of the Prepetition Employee Obligations

that it seeks to pay is entitled to priority status under 11 U.S.C. §§ 507(a)(4) and (5) or (as in the

case of employer payroll taxes) is entitled to priority under 11 U.S.C. § 507(a)(8).  Since these

priority obligations would be paid ahead of general unsecured claims in any event, general

unsecured creditors benefit when these obligations are paid with secured creditors' collateral, or

at least are left no worse off.

29.     Relief similar to the relief requested in this motion has been granted in this

District and by courts in other districts.  See, e.g., In re LodgeNet Interactive Corp., Ch. 11 Case

No. 13-10238-SCC (Bankr. S.D.N.Y. Feb. 27, 2013); In re The Upper Crust, LLC, et al., Ch. 11

Case No. 12-18134-HJB (Banrk. D. Mass. Oct. 10, 2012); In re Daffy's, Inc., Ch. 11 Case No.

12-13312-MG (Bankr. S.D.N.Y. Aug. 23, 2012); In re Education Resources Institute, Inc., Ch.

11 Case No. 08-12540-HJB (Bankr. D. Mass. Apr. 10, 2008); In re Tools 4 Hire, Ch. 11 Case

No. 06-14004-RS (Bankr. D. Mass. Nov. 7, 2006).

## Emergency Treatment Justified

30.     Through its payroll service, the Company is scheduled to issue payroll checks to

the Employees on Friday, March 15, 2013.  The payroll service is scheduled to deduct the

required amount from the Company's operating account early in the day on Thursday, March 14,

2013.  In order to assure that these steps can be taken on a timely basis so as to avoid the severe

disruption to the Company's business that would result from failure to honor the Prepetition

Payroll Obligations when due, *the Company requires, and therefore respectfully requests, an*

*emergency hearing on this motion on Wednesday, March 13, 2013.*

## Limitation of Notice Justified

31.     MLBR 9013(g)(2) provides that this Court may enter relief authorizing limited

notice where justified by the facts and circumstances.  Here the circumstances support limited

notice of the Motion.  First, the Company believes that the proposed notice of this Motion to (i)

the United States Trustee, (ii) counsel to the Bond Trustee; (iii) the Company's other potential

secured creditors that include:  Ally Financial, Kubota Credit Corporation, U.S.A. and Terex

Financial Service, and (iv) any party that that has entered an appearance or requested notice

(collectively, the "Notice Parties"), is reasonably calculated to provide notice to parties affected

by the relief requested in this Motion.  The Company will provide notice of both this Motion and

the hearing scheduled thereon via this Court's ECF System to the United States Trustee (and any

party that has filed a notice of appearance), notice via electronic mail to counsel to the Bond

Trustee and facsimile service to the other secured creditors.  Second, the Company estimates that

no Prepetition Employee Obligation owed to any individual Employee exceeds the $11,725

priority cap imposed under 11 U.S.C. § 507(a)(4).  As a result, the trade debt in this case, which

is as of the Petition Date was approximately $22,000, and other general unsecured creditors will

not be prejudiced by the fact they did not receive notice of this Motion.  Accordingly, the

Company submits that under the circumstance the proposed notice is appropriate notice as to all

parties in interest in the particular circumstances, including the nature of relief requested herein.

Further, the request to limit notice is necessary because it will allow the Company to avoid the

irreparable harm to employee retention and morale that would inevitably result from failing to

honor payroll and benefits in the ordinary course of business.

33.     No trustee, examiner or creditors' committee has been appointed in these Chapter

11 Cases.  The Company will cause notice of this Motion to be served as set forth above.

Pursuant to MLBR 9013-1(g)(1)(C), promptly after obtaining the date and time of the hearing on

this Motion (the "Hearing") from the Court, the Company will advise all of the aforementioned

parties of the date and time of the Hearing, and any objection deadline, and shall file a certificate

of service setting forth the manner of service.

WHEREFORE, the Company, as debtors-in-possession in the above-captioned Chapter

11 Cases, respectfully request that this Court enter an order, substantially in the form attached

hereto as Exhibit A, (a) granting the relief requested in this Motion, and (b) granting to the

Company such other and further relief as the Court deems just and proper.

Respectfully submitted,

THE GROVES IN LINCOLN, INC. and THE
APARTMENTS AT THE GROVES, INC.,

By their proposed attorneys,

/s/ Daniel C. Cohn
Daniel C. Cohn, Esq. BBO #090780
Ryan M. MacDonald, Esq. BBO #654688
Keri L. Wintle, Esq. BBO #676508
Murtha Cullina LLP
99 High Street, 20th Floor
Boston, MA  02110
(617) 457-4000 Telephone
(617) 482-3868 Facsimile
dcohn@murthalaw.com
rmacdonald@murthalaw.com
Dated: March 11, 2013                   kwintle@murthalaw.com

***Proposed Counsel to Debtors-in-Possession***