**<u>EXHIBIT A</u>**
**(Member Claims Agreement)**

**EXECUTION**

AGREEMENT CONCERNING MEMBER CLAIMS AND INTERESTS

THIS AGREEMENT is made as of the 29th day of May, 2013 (the "Agreement") by and among: (i) The Groves in Lincoln, Inc. ("Groves") and The Apartments at The Groves, Inc., each a Massachusetts not-for-profit corporation (collectively, the "Debtors"); (ii) Masonic Health System of Massachusetts, Inc., a Massachusetts not-for-profit corporation ("MHS"), and (iii) New England Deaconess Association - Abundant Life Communities, Inc., a Massachusetts not-for-profit corporation ("Deaconess").

Preliminary Statement

A.     The Debtors own and operate a senior living facility known as The Groves in Lincoln (the "Facility"). Development of the Facility was originally commenced by Groves under Deaconess's control and then completed under MHS's control.

B.     MHS and Deaconess (the "Members") are parties to a certain Members Agreement dated October 8, 2009 (the "Members Agreement"). Pursuant to the Members Agreement, MHS and Deaconess currently hold 80% and 20% member interests, respectively, in Groves (each a "Member Interest"). As of December 31, 2012, Groves owed MHS in excess of $16.4 million and Deaconess in excess of $3.9 million in subordinated and other debt under the Members Agreement (the "Member Debt").

C.     In addition to the Member Debt, financing for the Facility was supplied through issuance of the (i) $41,940,000 Massachusetts Development Finance Agency Senior Living Facility Revenue Bonds (The Groves in Lincoln Issue), Series 2009A, (ii) $34,750,000 Massachusetts Development Finance Agency Senior Living Facility Revenue Bonds (The Groves in Lincoln Issue), Series 2009B-1 Tax Exempt Mandatory Paydown Securities (TEMPS-85$^{SM}$), and (iii) $40,575,000 Massachusetts Development Finance Agency Senior Living Facility Revenue Bonds (The Groves in Lincoln Issue), Series 2009B-2 Tax Exempt Mandatory Paydown Securities (TEMPS-50 $^{SM}$) (collectively referred to as the "Bonds"). The current outstanding balance of the Bonds is approximately $88 million. The Bonds are secured by liens on substantially all of the Debtors' assets.

D.     Unable to pay the Bonds in full, the Debtors on March 11, 2013, each filed a petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court"), Case No. 13-11329-HJB (Jointly Administered) (the "Chapter 11 Case").

E.     The Debtors have entered into an Asset Purchase Agreement with BSL Lincoln, LLC (the "Purchaser") dated February 8, 2013 (the "APA"), providing, *inter alia*, for sale of the Facility and certain other assets (the "Subject Assets") to the Purchaser pursuant to section 363 of the Bankruptcy Code. Pursuant to the Order (a) Approving Bid Procedures, (b) Approving Expense Reimbursement, (c) Scheduling Hearing to Consider Sale of Substantially All of

Debtors' Assets Free and Clear of Liens and Other Interests, (d) Approving the Form and Manner of Notice Thereof, and (e) Granting Related Relief entered by the Bankruptcy Court on April 18, 2013 [Docket No. 136 in the Chapter 11 Case] (the "Bid Procedures Order"), the APA is subject to higher or better offers, with the Bankruptcy Court to determine which offer is the "highest and best" for the Subject Assets (the "Court-Approved Transaction").

F.    The APA provides for assumption by the Purchaser of all obligations of the Debtors to residents of the Facility, including refund obligations arising under their residency agreements, as amended (the "Resident Protection Provision").    The Bid Procedures Order requires that any counterbid to the APA shall also contain the Resident Protection Provision.

G.    The consideration to be paid under the APA or a different Court-Approved Transaction is expected to be insufficient to satisfy in full the Bonds. The Debtors nevertheless intend to propose a Chapter 11 plan (the "Plan"), with the consent and support of the trustee for the Bonds, under which there will be a distribution on account of non-Member general unsecured claims.    However, it is contemplated that neither MHS nor Deaconess will receive any consideration on account of its Member Interest or Member Debt.  In recognition of this and other contributions by Deaconess and MHS to the successful outcome of the Chapter 11 Case, and that no person has suggested any wrong-doing by either Member, it is contemplated that the Plan will contain a release of the Members similar to releases of other parties contributing to the successful outcome of the Chapter 11 Case.  To assure reciprocity, it is contemplated that Deaconess and MHS will release the Debtors and each other.

## Statement of Agreement

In consideration of the premises and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Debtors, MHS and Deaconess (collectively, the "Parties"), intending to be legally bound, agree as follows:

1.    Waiver of Payments.  Provided that the Court-Approved Transaction and the Bankruptcy Court's order authorizing same contain the Resident Protection Provision, and that the Plan, as confirmed by the Bankruptcy Court pursuant to an order containing provisions consistent with this Agreement (the "Confirmation Order"), contains the release provision required by paragraph 2 below, each of MHS and Deaconess hereby (a) waives the right to receive any consideration on account of its Member Interest and its Member Debt, and (b) agrees that by reason of this Agreement, it shall be deemed unimpaired by, and therefore to have accepted, the Plan.

2.    Release by the Debtors.  The Debtors shall include in the Plan the following release provisions applicable to Deaconess and MHS which shall be approved by the Bankruptcy Court in the Confirmation Order:

Effective upon the occurrence of the Effective Date, the Debtors shall, on their own behalf and on behalf of their respective bankruptcy estates, be deemed to forever release and discharge Deaconess, MHS and (solely in such capacities) their respective current and former directors, officers, employees, agents, attorneys, advisors, investment bankers, other professionals, lenders, investors, members, owners, shareholders, subsidiaries, other affiliates, heirs, successors and assigns of and from any and all claims,

2

demands, causes of action and the like, arising from any act, omission, event, or other occurrence that occurred on or prior to the Effective Date, whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, at law, in equity or otherwise.

3.    Release of the Debtors.  Effective upon occurrence of the Effective Date, as defined in the Plan (the "Effective Date"), MHS and Deaconess shall each be deemed to forever release and discharge the Debtors and (solely in such capacities) their respective current and former directors, officers, employees, agents, attorneys, advisors, investment bankers, other professionals, lenders, investors, members, owners, shareholders, subsidiaries, other affiliates, heirs, successors and assigns of and from any and all claims, demands, causes of action and the like, arising from any act, omission, event, or other occurrence that occurred on or prior to the Effective Date, whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, at law, in equity or otherwise.

4.    Release Between Deaconess and MHS.    Effective upon occurrence of the Effective Date, MHS and Deaconess shall each be deemed to forever release and discharge the other and the other's current and former directors, officers, employees, agents, attorneys, advisors, investment bankers, other professionals, lenders, investors, members, owners, shareholders, subsidiaries, other affiliates, heirs, successors and assigns of and from any and all claims, demands, causes of action and the like, arising from any act, omission, event, or other occurrence that occurred on or prior to the Effective Date, whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, at law, in equity or otherwise that is based on, relates to, or in any manner arises from, in whole or in part, the Debtors' prepetition and postpetition restructuring or sale efforts, the Chapter 11 Case, the negotiation and preparation of any sale agreement, Chapter 11 plan or any related document, confirmation of any Chapter 11 plan or approval of any sale, implementation of any Chapter 11 plan or closing of any sale, or any act or omission in relation to any of the foregoing.

5.    ROFR.    Deaconess (a) agrees that the right of first refusal and any similar provision of the Members Agreement (the "ROFR") do not apply to a sale of the Facility in the Chapter 11 Case, whether pursuant to the APA, another Court-Approved Transaction, the Plan or otherwise, and (b) waives the right to assert a ROFR in the Chapter 11 Case.

6.    Further Assurances.  MHS and Deaconess shall each take such further actions and execute such further documents as the Debtors reasonably request in order to facilitate the closing of the Court-Approved Transaction, including the Members' authorization for the Debtors to consummate such transaction, confirmation of the waiver of the ROFR, and any other matter requested by the buyer under the Court-Approved Transaction or its title company.  Each of the Parties shall take such further actions and execute such further documents as any other Party reasonably requests, in order to evidence, effect or confirm any the benefits intended to be provided by this Agreement.  Any material out-of-pocket expense entailed in taking any action under this paragraph 6 shall be paid by the party requesting such action.

3

7.     <u>Representations and Warranties of MHS and Deaconess</u>. MHS and Deaconess each represents and warrants to each other and the Debtors that:

(a)     it has all requisite corporate authority to enter into this Agreement and perform its obligations contemplated hereunder, and the execution and delivery of this Agreement and the performance of its obligations hereunder have been duly authorized by all necessary corporate action;

(b)     this Agreement is its legally valid and binding obligation, enforceable in accordance with the terms hereof; and

(c)     as a member of Groves, it has had access to full information concerning the operations and affairs of Groves such that it has had adequate information to enter into this Agreement on a fully-informed basis.

8.     <u>Representations and Warranties of Debtors</u>. Each Debtor represents and warrants to MHS and Deaconess that:

(a)     subject only to entry of the Confirmation Order, such Debtor has all requisite corporate authority to enter into this Agreement and perform its obligations contemplated hereunder, and the execution and delivery of this Agreement and the performance of its obligations hereunder have been duly authorized by all necessary corporate action; and

(b)     this Agreement is such Debtor's legally valid and binding obligation, enforceable in accordance with the terms hereof.

**THE DEBTORS:**

THE GROVES IN LINCOLN, INC.

By: _____
Toby Shea
Chief Financial Officer

THE APARTMENTS AT THE GROVES, INC.

By: _____
Toby Shea
Chief Financial Officer

**DEACONESS:**

NEW ENGLAND DEACONESS ASSOCIATION – ABUNDANT LIFE COMMUNITIES, INC.

By: _____
Rev. Herbert Taylor
President

**MHS:**

MASONIC HEALTH SYSTEM OF MASSACHUSETTS, INC.

By: _____
David C. Turner
Chief Executive Officer

4